# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

DINE BRANDS GLOBAL, INC v EUBANKS
THE WALT DISNEY COMPANY v EUBANKS

Docket Nos. 165391 and 165392. Argued on application for leave to appeal October 10, 2024. Decided March 24, 2025.

Dine Brands Global, Inc., and the Walt Disney Company brought separate lawsuits in the Oakland Circuit Court against Rachael Eubanks, in her capacity as the Treasurer for the state of Michigan, seeking declaratory and injunctive relief against the Treasurer pursuant to MCL 567.247 of the Uniform Unclaimed Property Act (the UUPA), MCL 567.221 *et seq*. In 2013, the Treasurer initiated examinations of the books and records of each plaintiff under the UUPA. The examinations were multistate in nature, and the Treasurer and these other states hired Kelmar Associates, LLC, as a third-party auditor to conduct the examinations. The purpose of the examinations was to investigate whether plaintiffs had complied with the annual reporting and remittance requirements of the UUPA relating to wages paid and accounts payable. The Treasurer sent a notice of examination to Disney on February 26, 2013, and to Dine Brands on June 18, 2013. The Treasurer, through Kelmar, sought to examine plaintiffs' books and records dating back to 2002. Plaintiffs each disputed whether certain property identified by Kelmar during the examination was subject to the UUPA's reporting and remittance requirements. Each plaintiff also argued that because the Treasurer had not commenced an enforcement action in court, the statute of limitations in MCL 567.250(2) continued to run during the examination such that collection of some or all the allegedly abandoned property would be time-barred. At the conclusion of the examinations, the Treasurer determined that each plaintiff was in possession of abandoned property that was required to be reported and remitted under the UUPA. The Treasurer sent each plaintiff a notice of examination determination that rejected the companies' statute-of-limitations defense and required each to remit specific sums of money. Neither plaintiff invoked its rights under MCL 567.251a to seek reconsideration or an administrative appeal of the Treasurer's determination. Each plaintiff filed suit in August 2021, alleging that the UUPA's statute of limitations barred the Treasurer from commencing any future enforcement action against plaintiffs with respect to the allegedly reportable property identified in the examination. Plaintiffs each moved for summary disposition, and in separate opinions and orders that applied the same reasoning, the circuit court, Phyllis C. McMillen, J., granted plaintiffs' motions, holding that an examination is neither an action nor a proceeding under MCL 567.253 and that even if an examination could be considered a proceeding, its commencement does not toll the statute of limitations. These orders barred the Treasurer from attempting to commence any future

enforcement action under MCL 567.253 as to the property at issue. The Treasurer appealed in each case, and the Court of Appeals affirmed the circuit court's judgments in two separate opinions that employed identical legal reasoning. 345 Mich App 227 (2023); 345 Mich App 213 (2023). The Treasurer sought leave to appeal in the Supreme Court in both cases. The Supreme Court consolidated the appeals and remanded the cases to the Court of Appeals while retaining jurisdiction, instructing the Court of Appeals to determine, assuming that an examination is a "proceeding" for purposes of MCL 567.250(2), whether the commencement of the examination tolled the statute of limitations in MCL 567.250(2) and whether the Treasurer must still file a lawsuit within the applicable time frame to avoid the lawsuit being time-barred. 512 Mich 932 (2023). On remand, in an unpublished per curiam opinion issued on November 9, 2023 (Docket Nos. 360291 and 360293), the Court of Appeals, YATES, P.J., and JANSEN and SERVITTO, JJ., held that plaintiffs should not have been granted summary disposition and remanded the cases to the circuit court for further proceedings. On plaintiffs' motion for reconsideration, the Court of Appeals vacated this opinion and issued an amended, unpublished per curiam opinion on January 11, 2024, that reached the same substantive conclusion but forwarded the decision to the Supreme Court for further consideration. The Supreme Court then ordered consolidated argument on the applications, directing the parties to submit supplemental briefs addressing (1) whether the Court of Appeals erred in interpreting the UUPA when it concluded that an examination or audit conducted by the Treasurer was not an "action or proceeding" under MCL 567.250(2); (2) if so, whether the commencement of the examination tolled the statute of limitations in MCL 567.250(2); and (3) whether, even if an examination is a "proceeding," the Treasurer must still file a lawsuit within the applicable time frame to avoid the lawsuit being time-barred. 513 Mich 987 (2024).

In a unanimous opinion by Justice WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

The phrase "action or proceeding" in MCL 567.250(2) encompasses formal lawsuits initiated in court as well as formal administrative procedures related to enforcement of and compliance with a holder's duties under the UUPA; accordingly, an examination conducted by the Treasurer pursuant to MCL 567.251 and MCL 567.251a falls within the meaning of "action or proceeding" under MCL 567.250(2). The initiation of an examination by the Treasurer does not toll the period of limitations in MCL 567.250(2); accordingly, the period of limitations as to a holder's annual duty to report and remit property under MCL 567.238 and MCL 567.240 of the UUPA continues to run during an examination.

1. Under MCL 567.251(2), the Treasurer has authority to perform an audit-like examination of an individual's or business's records to determine whether they have complied with the UUPA. Under MCL 567.251a(1) and (15), if at the conclusion of an examination the Treasurer determines that a holder has failed to report or deliver to the Treasurer unclaimed property as required by the UUPA, then the Treasurer must send the holder a notice of examination determination, which constitutes a decision of the Treasurer as to the property that must be delivered by the holder to the Treasurer. Within 90 days of the notice of examination determination, a holder that is aggrieved of the decision may bring an action in the circuit court, or within the same period, the holder may elect to contest the decision by filing a request for reconsideration with the Treasurer prior to bringing an action in circuit court. Under MCL

567.253, the Treasurer may bring an action in a court of competent jurisdiction to enforce the UUPA. MCL 567.250(2) provides that except as otherwise provided in MCL 567.250(3), an action or proceeding shall not be commenced by the Treasurer with respect to any duty of a holder under the UUPA more than 10 years, or, for the holder of records of transactions between two or more associations as defined under MCL 567.257a(2), more than five years, after the duty arose. The use of the term "action" in MCL 567.250(2), when read in context, refers to a lawsuit commenced in a court. Both lay and legal dictionaries supported this holding. Accordingly, an "examination" is not an "action" as that term is used in MCL 567.250(2). However, the term "proceeding" in MCL 567.250(2) encompasses more than a lawsuit; "proceeding" is a broader term than "action" when used for a technical or legal purpose and can encompass both judicial and administrative processes depending on the context in which the word is used. The term "proceeding" only appears in the UUPA as part of the phrase "action or proceeding"; in other words, "proceeding" is coupled with "action" by the disjunctive connector "or." The lack of an explicit indication in MCL 567.250(2) that the phrase "action or proceeding" was intended to be a term of art and the consistent placement of "or" between "action" and "proceeding" throughout the UUPA indicated that the Legislature intended for the statute of limitations to be satisfied by *either* the Treasurer's commencement of an action or of a proceeding against a holder. Because the use of "or" indicates an alternative, the word "proceeding," as used in MCL 567.250(2) and elsewhere in the UUPA, encompasses a formal administrative proceeding or investigation as well as a formal legal action commenced in a court. An examination and the processes and procedures it entails are parts of administrative proceedings; therefore, a proceeding includes an examination. Accordingly, the Treasurer must initiate an examination to determine whether a holder has complied with their legal duty to annually report and remit presumptively abandoned property within 5 or 10 years (depending on the type of transaction) of the date that legal duty arose. In this case, because the Court of Appeals in both cases held that an "action or proceeding" did not include the UUPA's examination process, those holdings were reversed.

2. Statutes of limitations exist to avoid the litigation of stale claims and to encourage litigants not to sit on their rights or allow evidence to disappear. The Legislature explicitly articulates tolling provisions when it intends that the statute of limitations be tolled, and courts have rejected invitations to apply tolling of a legislatively enacted statute of limitations in the absence of express statutory language. In this case, had the Legislature intended the Treasurer's commencement of a UUPA examination to toll the statute of limitations in MCL 567.250(2), it would have adopted language to effectuate that intent. Accordingly, the Treasurer's initiation of an examination does not toll the limitations period in MCL 567.250(2). Because the commencement of an examination does not toll the statute of limitations under MCL 567.250(2), the period of limitations as to a holder's annual duty to report and remit property under MCL 567.238 and MCL 567.240 continues to run during an examination.

3. There remained a question as to the duty that is at issue for purposes of postexamination enforcement for measuring the statute of limitations. Under the plain language of MCL 567.250(2), the running of the applicable period of limitations is linked to "any duty of a holder under" the UUPA, and the period runs from the date "the duty arose." Therefore, identification of the relevant legal duty that is implicated by postexamination enforcement efforts is necessary before the determination of whether a period of limitations has expired as to the unreported property identified after a completed examination. Only after an examination is conducted and a

notice of examination determination is issued under MCL 567.251a can it be said that the UUPA *potentially* imposes an additional duty upon the holder to *pay or remit property* under MCL 567.255. The potential existence of a separate postexamination duty that could be enforced for an additional period remained an open question. If such a duty exists, then the next question concerns the scope of previously abandoned property that could be encompassed within such a duty. Resolution of this issue turns on whether MCL 567.251a and MCL 567.255 interact to impose a legal duty of postexamination compliance on a holder that is distinct from the annual duty to report and remit abandoned property. This issue must be resolved in these cases because plaintiffs sought and received prospective declaratory and injunctive relief that bars the Treasurer from filing an enforcement action in the future. Accordingly, these cases were remanded to the Court of Appeals for resolution of this issue.

Court of Appeals' opinions in 345 Mich App 227 and 345 Mich App 213 reversed; Court of Appeals' January 11, 2024 unpublished opinion affirmed in part and vacated in part; and cases remanded to the Court of Appeals.

Justice THOMAS did not participate because the Court considered this case before she assumed office.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

FILED  March 24, 2025

STATE OF MICHIGAN

SUPREME COURT

DINE BRANDS GLOBAL, INC.,

       Plaintiff-Appellee,

v                                    No. 165391

RACHAEL EUBANKS, in her capacity as
the TREASURER FOR THE STATE OF
MICHIGAN,

       Defendant-Appellant.

THE WALT DISNEY COMPANY,

       Plaintiff-Appellee,

v                                    No. 165392

RACHAEL EUBANKS, in her capacity as
the TREASURER FOR THE STATE OF
MICHIGAN,

       Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except THOMAS, J.)

WELCH, J.

These consolidated appeals concern Michigan's Uniform Unclaimed Property Act (the UUPA), MCL 567.221 *et seq.* The UUPA provides a process by which the state holds certain unclaimed property in trust for the benefit of the rightful owner with the goal of reuniting those owners with their unclaimed property. *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 492; 776 NW2d 387 (2009). To track unclaimed property, the UUPA imposes legal obligations on entities and individuals who become holders[1] of unclaimed property[2] that belongs to another individual or entity, and the UUPA grants certain powers to a state administrator, which, in Michigan, is defendant, the Treasurer. MCL 567.222(a).

Today, we clarify the UUPA's statute of limitations, as set forth in MCL 567.250(2). We hold that although an examination is a "proceeding" for purposes of MCL 567.250(2), the commencement of an examination does not toll the statute of limitations. However, because the limitations period applicable to "an action or proceeding" commenced by the Treasurer "with respect to any duty of a holder under this act" runs from the date "the duty arose," MCL 567.250(2), identification of the specific duty that the Treasurer seeks to

---

[1] The UUPA defines a "holder" as a person, wherever organized or domiciled, who has possession of property belonging to another, is a trustee, is indebted to another on an obligation, or some combination of those three categories. MCL 567.222(i). A "person" includes "an individual, business association, state or other government, governmental subdivision or agency, public corporation, public authority, estate, trust, 2 or more persons having a joint or common interest, or any other legal or commercial entity." MCL 567.222(o).

[2] The UUPA defines "property" as "tangible or intangible personal property owned by a person." MCL 567.222(p).

2

enforce is a prerequisite to determining whether the limitations period has run. Plaintiffs each obtained declaratory and prospective injunctive relief preventing the Treasurer from initiating a future action to compel compliance with the results of the examinations at issue on the basis that such an action would be untimely under MCL 567.250(2). To decide whether the nature and scope of the granted prospective relief was proper, it is necessary to determine whether a holder's obligation to comply with the results of an examination after receiving a "notice of examination determination," MCL 567.251a, is a separate legal duty from a holder's annual duty to report and remit abandoned property, see MCL 567.255. This question was not clearly resolved by the Court of Appeals and has been sparsely briefed in this Court. Therefore, we reverse in part, affirm in part, and vacate in part the judgments of the Court of Appeals and remand these cases to that Court for resolution of this remaining issue.

## I. OVERVIEW OF MICHIGAN'S UNIFORM UNCLAIMED PROPERTY ACT

The UUPA creates a general legal presumption of abandonment that attaches to property "that is held, issued, or owing in the ordinary course of a holder's business . . . for more than 3 years after it becomes payable or distributable . . . ."[3] MCL 567.223(1). Once the presumption of abandonment has been satisfied and the relevant conditions under

---

[3] There are exceptions to the UUPA's general rules as well as conditions on whether specific types of property will be subject to the custody of the state of Michigan for purposes of the UUPA. See MCL 567.224a to MCL 567.237a. For example, unclaimed wages worth more than $50 are presumed abandoned after one year rather than after three years. MCL 567.236(1). But "[u]npaid wages of $50.00 or less owing in the ordinary course of the holder's business that remain unclaimed by the owner for more than 1 year after becoming payable are not subject to" the UUPA. MCL 567.236(2). Additionally, most unclaimed property worth $25 or less is not subject to the custody of the state of Michigan and is thus exempt from the requirements of the UUPA. See MCL 567.224a.

MCL 567.223 and MCL 567.226 to MCL 567.237 have been met, then the property in question "is subject to the custody of [Michigan] as unclaimed property" if one or more of the criteria listed under MCL 567.224(a) to (f) are met. MCL 567.224. Those criteria generally require evidence of a significant connection between the abandoned property and the state of Michigan, such as the apparent owner[4] of the abandoned property having an address in Michigan. See MCL 567.224(a) to (f).

The UUPA imposes reporting and remittance obligations on holders of presumptively abandoned property. A person holding property presumed abandoned and subject to Michigan's custody under the UUPA is required to report annually to the Treasurer concerning the property as provided in MCL 567.238. Unless explicitly postponed or extended, the report is due "on or before July 1 of each year for the 12-month period ending on the immediately preceding March 31." MCL 567.238(4). The holder must also provide a statutorily mandated notice to the apparent owner of abandoned property before submitting the report. MCL 567.238(5). A holder who is required to file a report under MCL 567.238 "shall at the time for filing the report pay or deliver to the administrator all abandoned property that is required to be reported under [MCL 567.238] or any balance owing if an estimated payment was made under" MCL 567.238. MCL 567.240(1). Additionally, any holder that is required to file a report under MCL 567.238 "as to any property for which it has obtained the last known address of the owner[] shall maintain a record of the name and last known address of the owner for 10 years . . . ."

_____

[4] MCL 567.222(b) (" 'Apparent owner' means the person whose name appears on the records of the holder as the person entitled to property held, issued, or owing by the holder.").

4

MCL 567.252(1) (punctuation omitted).  The recordkeeping obligation is five years "for the holder of records of transactions between 2 or more associations as defined under [MCL 567.257a(2)] . . . except to the extent that a shorter time is provided in [MCL 567.252(2)] or by rule of the administrator."  MCL 567.252(1).

Once the Treasurer takes possession of abandoned property from a holder, the Treasurer must assume custody and safekeeping of the property.  MCL 567.241(1).  A holder who remits the property "in good faith is relieved of all liability" as to "the value of the property . . . after the payment or delivery to the administrator."  MCL 567.241(1).  The UUPA does not require the Treasurer to retain possession of abandoned property indefinitely; instead, the UUPA imposes a general obligation to liquidate the abandoned property at a public sale within one to three years, depending on the type of property.  See MCL 567.243.  The true owner of abandoned property retains the right to claim an interest in the property and, if validated, take possession of the property or, for property that has been sold, receive the liquidated value of the property plus interest.[5]  See MCL 567.245. Other states also can claim an interest in property that has been remitted to the Treasurer. See MCL 567.246.

The UUPA contains enforcement mechanisms for when a holder fails to comply with the previously outlined process.  The UUPA grants the Treasurer the authority to "require a person who has not filed a report under [the UUPA] or a person who the administrator believes has filed an inactive, incomplete, or false report[] to file a verified

_____

[5] For property other than money, an owner also retains a right to "receive from the administrator any dividends, interest, or other increments realized or accruing on the property at or before liquidation or conversion of the property into money."  MCL 567.242.

report in a form specified by the administrator." MCL 567.251(1) (punctuation omitted). That report details the unclaimed property the Treasurer believes should have been reported or delivered under the UUPA. *Id*.

Additionally, the Treasurer has authority to perform an audit-like examination of an individual's or business's records to determine whether they have complied with the UUPA. MCL 567.251(2) ("The administrator, at reasonable times and upon reasonable notice, may examine the records of a person to determine whether the person has complied with this act. The administrator may conduct the examination even if the person believes he or she is not in possession of any property reportable or deliverable under this act.").[6] If at the conclusion of an examination the Treasurer "determines that a holder has failed to report or deliver to the administrator unclaimed property as required by" the UUPA, then the Treasurer must send the holder a "notice of examination determination," which "constitute[s] a decision of the administrator" as to the property that must be delivered by the holder to the administrator. MCL 567.251a(1) and (15). Within 90 days of the notice of examination determination, "a holder that is aggrieved of the decision may bring an action in the circuit court, or within the same period, the holder may elect to contest the decision by filing a request for reconsideration with the administrator prior to bringing an action in circuit court." MCL 567.251a(1); see also MCL 567.247 (providing that an aggrieved person may bring an action in the circuit court).

---

[6] The UUPA explicitly authorizes the Treasurer to contract with third parties to conduct such examinations on the Treasurer's behalf, MCL 567.251(2), and to enter into cooperative agreements with other states to pursue compliance and enforcement of the UUPA, MCL 567.254.

6

When necessary, the Treasurer "may bring an action in a court of competent jurisdiction to enforce" the UUPA. MCL 567.253. The UUPA also contains a statute of limitations, which is the primary focus of these consolidated appeals. Pursuant to MCL 567.250(2):

> Except as otherwise provided in [MCL 567.250(3)],[7] *an action or proceeding shall not be commenced by the administrator with respect to any duty of a holder* under this act *more than 10 years*, or, for the holder of records of transactions between 2 or more associations[8] as defined under [MCL 567.257a(2)], more than 5 years, *after the duty arose.* [Emphasis added.]

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, the Walt Disney Corporation (Disney) and Dine Brands Global, Inc. (Dine Brands),[9] are business entities that are not domiciled in the state of Michigan. The Treasurer initiated an examination of each company's books and records under the UUPA. Both examinations were multistate in nature, meaning that the Treasurer and the appropriate administrator of numerous other states agreed to complete the examination in a cooperative manner. The Treasurer and these other states hired Kelmar Associates, LLC (Kelmar) as a third-party auditor to conduct the examinations. The purpose of the Treasurer-initiated examinations was to investigate whether plaintiffs had complied with

---

[7] MCL 567.250(3) concerns a streamlined audit process that is available to eligible holders. That process is not at issue in this matter.

[8] It is undisputed that both plaintiffs meet the statutory definition of "association." See MCL 567.257a(2).

[9] Dine Brands, Inc., owns and franchises several restaurant chains, including Applebee's and IHOP.

7

the annual reporting and remittance requirements of the UUPA relating to wages paid and accounts payable.

A. THE EXAMINATION OF EACH PLAINTIFF'S BOOKS AND RECORDS

The entire examination process took between eight and nine years to complete.[10] The Treasurer sent a notice of examination to plaintiff Disney on February 26, 2013, and to plaintiff Dine Brands on June 18, 2013. The Treasurer, through Kelmar, sought to examine plaintiffs' books and records dating back to 2002. Between 2020 and 2021, Kelmar sent plaintiffs spreadsheets that listed accounts payable to vendors and payroll checks that Kelmar and the Treasurer determined to be unclaimed property owed to residents of Michigan.

Plaintiffs each disputed whether certain property identified by Kelmar during the examination was subject to the UUPA's reporting and remittance requirements. Each plaintiff also argued that because the Treasurer had not commenced an enforcement action in court, the statute of limitations in MCL 567.250(2) continued to run during the examination such that collection of some or all the allegedly abandoned property would be time-barred.

At the conclusion of the examinations, the Treasurer determined that each plaintiff was in possession of abandoned property that was required to be reported and remitted under the UUPA. On May 14, 2021, the Treasurer issued to Disney a "notice of examination determination" that rejected Disney's statute-of-limitations defense and

_____

[10] The parties offer competing narratives as to why the examination process took so long. The reasons for the delay and who bears the fault are irrelevant for purposes of resolving the issues before the Court.

8

concluded that Disney was required to remit $532,945.12 as presumptively abandoned property. On July 6, 2021, the Treasurer likewise issued to Dine Brands a "notice of examination determination" that rejected Dine Brands' statute-of-limitations defense and concluded that it was required to remit $258,169.09 as presumptively abandoned property. The Treasurer took the position that the UUPA's period of limitations on commencement of an examination extends 10 reportable years from the date the state notifies a holder of an examination. Thus, given that the unclaimed property at issue allegedly should have been remitted by plaintiffs within the 10 years prior to the 2013 notices of examination, the Treasurer believed that all the property was within its scope of authority. Neither plaintiff invoked its rights under MCL 567.251a to seek reconsideration or an administrative appeal of the Treasurer's determination.

## B. PLAINTIFFS EACH COMMENCE CIVIL LAWSUITS SEEKING DECLARATORY AND INJUNCTIVE RELIEF

In August 2021, plaintiffs filed separate civil lawsuits in the circuit court, seeking declaratory and injunctive relief against the Treasurer pursuant to MCL 567.247. Both plaintiffs pleaded a single allegation that the UUPA's statute of limitations, MCL 567.250(2), barred the Treasurer from commencing any future enforcement action against plaintiffs with respect to the allegedly reportable property identified in the examination. Both plaintiffs requested a declaratory judgment providing that: (1) MCL 567.250(2) precludes any enforcement action as to the property at issue; (2) the statute of limitations is not tolled by the commencement of an examination, and thus any unclaimed property that has been held longer than the applicable 5- or 10-year period need not be remitted; (3) the Treasurer cannot compel a holder to report or remit time-barred property;

and (4) the Treasurer cannot compel a holder to conduct due diligence as to time-barred property. Both plaintiffs also sought a prospective injunction enjoining the Treasurer from commencing a future enforcement action and an award of costs and reasonable attorney fees. In each case, the Treasurer denied that the statute of limitations applied and argued that the plaintiff was equitably estopped from raising that defense because of its responsibility in delaying the examinations.

The same circuit court judge was assigned to both cases,[11] and each plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing that the amount the Treasurer claimed was owed for the unclaimed property was time-barred by the statute of limitations such that they were entitled to judgment as a matter of law. In each case, the Treasurer opposed the motion and sought summary disposition under MCR 2.116(I)(2) (allowing for a court to grant summary disposition to the opposing party). In separate opinions and orders that applied the same reasoning, the circuit court granted plaintiffs' motions under MCR 2.116(C)(7) (dismissal because of the statute of limitations).

The circuit court held that the statute of limitations set forth in MCL 567.250(2) started to run at the time of the relevant duty, which the court found was a holder's annual duty to report and remit unclaimed property pursuant to MCL 567.238(4) and MCL 567.240. As previously noted, MCL 567.250(2) provides, in relevant part, that "an action or proceeding shall not be commenced by the administrator with respect to any duty of a holder under [the UUPA] more than 10 years [or 5 years for records of transactions

_____

[11] The Treasurer initially had the cases transferred to the Court of Claims because of the allegations being raised against a state officer acting in her official capacity. But after the transfer, plaintiffs successfully moved to have the cases returned to the circuit court as the proper venue.

10

between two or more associations] after the duty arose." The court rejected the Treasurer's argument that the beginning of an examination was the beginning of an "action or proceeding" under MCL 567.250(2).

Instead, the circuit court characterized an "action or proceeding" as an enforcement action under MCL 567.253 and held that the Treasurer's failure to commence such an action within the applicable limitations period prevented her from doing so in the future. The circuit court also rejected the Treasurer's argument that any future enforcement action under MCL 567.253 would be timely if an examination starts within the applicable limitations period. The court held that an examination is neither an action nor a proceeding and that even if an examination could be considered a proceeding, its commencement does not toll the statute of limitations.

On the basis of these holdings, the circuit court granted plaintiffs' motions in each case and enjoined the Treasurer from requiring either plaintiff, or any of their affiliates, to report and remit the time-barred property. The circuit court's orders thus barred the Treasurer from attempting to commence *any future* enforcement action under MCL 567.253 as to the property at issue.

## C. THE COURT OF APPEALS' INITIAL SET OF OPINIONS

The Treasurer appealed to the Court of Appeals in each case, and the Court of Appeals affirmed the circuit court's judgments in two separate published opinions that were issued on January 19, 2023. *Dine Brands Global, Inc v Eubanks*, 345 Mich App 227; 4 NW3d 782 (2023); *Walt Disney Co v Eubanks*, 345 Mich App 213; 4 NW3d 797 (2023).

11

The legal reasoning employed in each opinion is identical. To avoid duplication, this opinion refers to the analysis from the decision in *Dine Brands*.

The panel characterized the primary argument on appeal as "whether an examination constitutes an 'action or proceeding' under MCL 567.250(2)." *Dine Brands*, 345 Mich App at 236-237. The panel acknowledged that the UUPA does not define "action," "proceeding," or "examination." Based on the use of "examination" in MCL 567.251(2), MCL 567.251a(1), and MCL 567.251a(15), the panel held that the term "refers to the examination of records, or audit, by an administrator." *Id*. at 237. The panel further opined that the use of the phrase "action or proceeding" in MCL 567.250(2) and the use of "action" in MCL 567.247; MCL 567.248(1); MCL 567.249; MCL 567.251a(1), (2), (4), (8), (9), (13), and (14); MCL 567.254(4); and MCL 567.254(5) suggest that "the terms 'action' and 'proceeding' refer to judicial actions and proceedings. The only time 'action' does not mean a judicial action is when the statute discusses the actions of individuals." *Id*. at 237-238. Additionally, the use of "action" in MCL 567.248 and MCL 567.249 "concern[s] actions after an administrator's earlier conduct. The conduct of an administrator before a lawsuit is the examination or audit. Therefore, the initial conduct at issue would be the examination, and the subsequent forbidden 'action' is the judicial action regarding the examination determination." *Id*. at 238.

The Court of Appeals also acknowledged the principle that when the Legislature uses different words in a statute, "the words are generally intended to connote different meanings," and the Court of Appeals applied that principle to hold that the failure to use "examination" in MCL 567.250(2) "indicates the Legislature did not intend that 'action or proceeding' be construed to include examinations under" that provision. *Id*. at 238-239

12

(quotation marks and citation omitted). Thus, the Court held that "[a]n examination is not an 'action or proceeding' for purposes of tolling the limitations period" and that the circuit court did not err by granting summary disposition because "defendant's claims for remittance of unclaimed accounts-payable checks and unclaimed wages were time-barred." *Id*. at 239. Given these holdings, the panel declined to address the parties' other arguments.

### D. INITIAL PROCEEDINGS IN THIS COURT

The Treasurer sought leave to appeal the judgment of the Court of Appeals in both *Dine Brands* and *Disney*. This Court consolidated the appeals and remanded the cases to the Court of Appeals *while retaining jurisdiction*. We instructed the Court of Appeals "to determine, assuming that an examination is a 'proceeding' for purposes of MCL 567.250(2): (1) whether the commencement of the examination tolled the statute of limitations in MCL 567.250(2); and (2) whether the Treasurer must still file a lawsuit within the applicable time frame to avoid the lawsuit being time-barred." *Dine Brands Global, Inc v Eubanks*, 512 Mich 932, 932 (2023).

### E. THE COURT OF APPEALS OPINION ON REMAND

The Court of Appeals issued a consolidated opinion on remand that applied the presumption mandated by our remand order and reached the opposite outcome, concluding that summary disposition should not have been granted for plaintiffs. *Walt Disney Co v Eubanks (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued November 9, 2023 (Docket Nos. 360291 and 360293). That decision was then vacated on reconsideration under MCR 7.215(I) and reissued in an amended form, although the Court

13

still reached the same substantive conclusion.[12] *Walt Disney Co v Eubanks (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued January 11, 2024 (Docket Nos. 360291 and 360293) (*Disney (On Remand)*).

In *Disney (On Remand)*, the Court of Appeals held that if an "examination" is a "proceeding" for purposes of MCL 567.250(2), then the circuit court erred by granting plaintiffs' motions for summary disposition. The panel acknowledged that MCL 567.252 requires holders "to maintain records of the name and last known address of property owners for 5 or 10 years, depending on the type of transaction at issue," and that MCL 567.251(2) authorizes the Treasurer (or its agents) to examine these records for compliance with the UUPA. *Disney (On Remand)*, unpub op at 2-3. But "[t]here is no time limit for conducting an examination," and an examination "can be a lengthy process, as was the case here . . . ." *Id*. at 3. The Court observed that MCL 567.251a(1) authorizes the Treasurer to issue a notice, at the conclusion of an examination, stating what property the holder has failed to report or deliver, and that notice is a "decision" that a holder may challenge in the circuit court or through an administrative appeal under MCL 567.251a(2) to (13). *Id*. The panel reasoned that if an "examination" is a "proceeding," then "this Court must assume one of the two actions that must be taken within the pertinent timeframes—an 'action *or* proceeding'—occurred in these cases when defendant began the examinations." *Id*.

---

[12] The Court of Appeals' initial opinion on remand had concluded with a statement that the circuit court's judgments were reversed and that both cases were remanded to the circuit court for further proceedings. This was an error because, as pointed out in plaintiffs' motion for reconsideration, this Court had retained jurisdiction. Accordingly, the opinion issued on reconsideration corrected the final paragraph to reflect that the decision on remand would be forwarded to this Court for further consideration.

The panel went on to conclude that if an examination is a proceeding, then analysis and application of tolling principles was unnecessary. This was because MCL 567.250(2)

> *only requires that an action or a proceeding be commenced within the applicable time period.* "The Legislature's use of the disjunctive word 'or' indicates an alternative or choice between two things." *Pike v Northern Mich Univ*, 327 Mich App 683, 697; 935 NW2d 86 (2019) (citation and quotation marks omitted). Here, that means that the Legislature expressed its intent that, within the period of limitations, defendant could choose to either: (1) begin an examination/proceeding; *or* (2) commence an action. If this Court must assume that an action is a "proceeding," then it has to conclude that defendant took one of two permissible actions during the appropriate timeframes, making defendant's actions timely under MCL 567.250(2). And if the "proceeding" began in a timely fashion, then the question of tolling becomes irrelevant. Indeed, there is no need to consider the issue of tolling if the statute has been satisfied by defendant's commencement of a "proceeding" under the statute.

> Expanding on the above, defendant began examinations against each plaintiff in 2013, at a time when the limitations period had not expired. Defendant finished the examination and entered final decisions that could be appealed in circuit court under MCL 567.251a. Plaintiffs challenged those final decisions in circuit court. However, rather than challenging the merits of those decisions, as contemplated by MCL 567.251a, plaintiffs asked the circuit court to bar defendant from enforcing those decisions for the reason that the statute of limitations had expired. *Importantly, however, they did not argue that the statute of limitations expired for the start of the examination. Rather, they argued that defendant should not be permitted to enforce the (timely—given the assumption that an examination is a "proceeding") decisions. To allow plaintiffs to assert the statute of limitations as a defense against administrative decisions that began as timely examinations should not be permitted under the statute.*

> Stated otherwise, once the examinations began in a timely fashion— and assuming that examinations were "proceedings," as directed by the Supreme Court's remand order—the question about compliance with the statute of limitations is complete. Defendant complied with the statute of limitations when it started the examinations within the applicable time period. MCL 567.251a allowed defendant to issue final decisions at the end of those timely examinations, which defendant did. Plaintiffs were allowed to, and did, file timely actions to challenge those timely examinations. Any questions about tolling are not pertinent.

15

Moreover, it should be noted that *defendant did not need to take any additional action, aside from issuing its final decision under MCL 567.251a. And there is no statutory time limit for issuing an initial decision under MCL 567.251a.* [*Disney (On Remand)*, unpub op at 3-4 (emphasis added).]

The panel next answered this Court's second question on remand, concluding that "it does not appear that defendant must file a lawsuit" to enforce the UUPA. *Id*. at 4. Rather, "MCL 567.251a allows defendant to issue a final decision after determining that a holder has failed to deliver unclaimed property required by the act. The burden, and obligation, of challenging that decision is then placed on the holder under MCL 567.251a(1)." *Id*. Thus, any challenge to the Treasurer's administrative decision at the conclusion of the examination "must be initiated by the holder." *Id*. "[T]he UUPA does not require defendant to file an action to compel payment by a holder after an examination reveals that a holder failed to remit the necessary property under the act." *Id*. at 4-5. Therefore, the Court of Appeals panel vacated the circuit court's orders that granted summary disposition to plaintiffs and forwarded its decision to this Court for further consideration.

## F. ADDITIONAL PROCEEDINGS IN THIS COURT

After the Court of Appeals transmitted its decision to this Court, we ordered a consolidated argument on the applications. MCR 7.305(H)(1). We directed the parties to submit supplemental briefs addressing:

> (1) whether the Court of Appeals erred in interpreting the Uniform Unclaimed Property Act, MCL 567.221 *et seq*., when it concluded that an examination or audit conducted by the Treasurer was not an "action or proceeding" under MCL 567.250(2); (2) if so, whether the commencement of the examination tolled the statute of limitations in MCL 567.250(2); and (3) whether, even if an examination is a "proceeding," the Treasurer must still file a lawsuit within the applicable time frame to avoid the

16

lawsuit being time-barred. [*Dine Brands Global, Inc v Eubanks*, 513 Mich 987, 987 (2024).]

The Court heard a consolidated oral argument on October 10, 2024.

### III. THE APPROPRIATE LEGAL STANDARDS ON APPEAL

These consolidated appeals concern a circuit court's judgment granting summary disposition under MCR 2.116(C)(7) and granting declaratory relief. We review de novo a trial court's decision to grant or deny summary disposition. See *Wilmore-Moody v Zakir*, 511 Mich 76, 82; 999 NW2d 1 (2023). De novo review also applies to appellate review of the final disposition in a declaratory judgment action. See *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 615; 854 NW2d 172 (2014). Questions of law, including questions of statutory interpretation, are also reviewed de novo. See *Wilmore-Moody*, 511 Mich at 82.

In Michigan, "[d]eclaratory relief may be claimed in cases of actual controversy." MCR 2.111(B)(2). See also MCR 2.605(A)(1). As previously noted, the UUPA explicitly authorizes "[a] person who is aggrieved by a decision of the administrator" to "bring an action to establish the claim in the circuit court, naming the administrator as a defendant," within 90 days of the challenged decision. MCL 567.247.

Plaintiffs sought summary disposition under MCR 2.116(C)(10), and the circuit court erroneously recharacterized the requests for summary disposition as motions under MCR 2.116(C)(7).[13] While plaintiffs were correct, the circuit court's error does not affect

---

[13] Summary disposition pursuant to MCR 2.116(C)(7) is appropriate when a claim raised in a complaint or counterclaim is barred by the expiration of a statute of limitations, whereas summary disposition under MCR 2.116(C)(10) is appropriate when a party establishes that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The Treasurer has not commenced a lawsuit against plaintiffs to enforce the UUPA. Thus, this is not a situation where a party is arguing that a claim pleaded in a

the matter because the issues before us are purely legal in nature, and thus the standard of review under either section of MCR 2.116(C) is de novo.

## IV. ANALYSIS

The issues on appeal concern the proper interpretation and application of the UUPA, with a focus on its statute of limitations, MCL 567.250(2). Principles of statutory interpretation lead us to conclude that an "action or proceeding" includes an examination initiated by the Treasurer. We further hold that the initiation of an examination by the Treasurer does not toll the statute of limitations.

The primary purpose of statutory interpretation is to determine the intent of the Legislature as conveyed by the statutory language. See *Schafer v Kent Co*, ___ Mich ___, ___; ___ NW3d ___ (July 29, 2024) (Docket No. 164975); slip op at 12. The Legislature has further instructed that "[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a. We are also obliged to consider the context in which statutory language is used. See *Schafer*, ___ Mich at ___; slip op at 12; see also *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 367-368; 917

---

complaint or counterclaim is barred by the expiration of a statute of limitations. Instead, plaintiffs commenced separate declaratory actions seeking judgments holding that the UUPA's statute of limitations, MCL 567.250(2), prospectively prohibits the Treasurer from compelling their compliance with the notice of examination determination issued under MCL 567.251a(1). Plaintiffs were therefore correct to move for summary disposition under MCR 2.116(C)(10).

NW2d 603 (2018). Dictionaries can be useful tools for performing statutory interpretation, but "[t]he Legislature is not confined to a single dictionary definition of a term when enacting a law, and neither should this Court be so limited when interpreting that law. The dictionary is but one data point; it guides our analysis, but it does not by itself settle it." *In re Erwin*, 503 Mich 1, 21; 921 NW2d 308 (2018). Additionally, because the UUPA was based on the Model Uniform Unclaimed Property Act (1981) (the 1981 Model Act), we may infer that the Legislature was aware of the "policies which underlie the model [act's] language." *MacDonald v State Farm Mut Ins Co*, 419 Mich 146, 151; 350 NW2d 233 (1984) (quotation marks and citation omitted).

A. THE MEANING OF "ACTION OR PROCEEDING" IN MCL 567.250(2)

The first question we must decide is whether an examination conducted by the Treasurer pursuant to MCL 567.251 and MCL 567.251a falls within the meaning of "action or proceeding" under MCL 567.250(2). The UUPA does not provide definitions for "action," "proceeding," or "examination." Plaintiffs argue that the phrase "action or proceeding" refers solely to a *judicial* dispute resolution process and that defining the term in that manner is consistent with the intent of the drafters of the 1981 Model Act upon which the UUPA was based. Plaintiffs further argue that their proposed definition of "action or proceeding" necessarily excludes examinations. The Treasurer, by contrast, argues that "action or proceeding" is not a term of art and that the plain and ordinary meaning of the phrase encompasses an administrative investigation such as an examination.

## 1. "ACTION" IN MCL 567.250(2) REFERS TO A LAWSUIT

We agree with the Court of Appeals and plaintiffs that the use of "action" in MCL 567.250(2), when read in context, refers to a lawsuit commenced in a court. That is how this Court has typically construed the word "action" when it has been used in a statute to refer to a legal process or procedure. For example, when interpreting MCL 339.2412(1), which prohibits an unlicensed builder from "bring[ing] or maintain[ing] an action . . . for the collection of compensation," we understood "action" to refer to " 'a lawsuit brought in court; a formal complaint within the jurisdiction of a court of law.' " *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 530; 872 NW2d 421 (2015), quoting *Black's Law Dictionary* (6th ed). See also *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 554-555; 640 NW2d 256 (2002).

Both lay and legal dictionaries support our holding. One lay dictionary provides several definitions for "action," including "an act or thing done" and a "legal proceeding by which one seeks to have a wrong put right; lawsuit." *Webster's New World Dictionary of American English: Third College Edition* (1988). Similarly, *Black's Law Dictionary* (12th ed) provides that an "action" means "[t]he process of doing something; conduct or behavior" or "[a] civil or criminal judicial proceeding[.]" The context in which the word "action" appears in MCL 567.250(2) and elsewhere in the UUPA establishes that, with two exceptions,[14] the Legislature intended the term "action" to refer to a lawsuit commenced in a court. The operative phrase in many portions of the UUPA is "action in," which provides a clear reference to a judicial process or procedure. See, e.g., MCL 567.247

---

[14] See MCL 567.248(1) ("on account of any action taken by a holder"); MCL 567.249 ("on account of any action taken by the administrator").

(giving "[a] person who is aggrieved by a decision of [the Treasurer] or whose claim [for property] has not been acted upon within 90 days" the right to "bring an action to establish the claim in the circuit court"); MCL 567.251a(1), (2), (3), (8), (9), (13), and (14) (referring to a holder's right to contest the Treasurer's "notice of examination determination" through "an action in the circuit court"); MCL 567.253 ("The administrator may bring an action in a court of competent jurisdiction to enforce this act."); MCL 567.254(4) and (5) (referring to interstate cooperation to enforce Michigan's or another state's UUPA through "an action in the name of" Michigan's or another court's administrator and referring to expenses and attorney fees). Although the Treasurer is correct that some uses of the term "action" in the UUPA describe a thing done by a person or the administrator that is not litigious, it is clear from the context that these uses of "action" convey a different meaning than that set forth in MCL 567.250(2). In sum, an "examination" is not an "action" as the term is used in MCL 567.250(2).

## 2. "PROCEEDING" IN MCL 567.250(2) ENCOMPASSES MORE THAN A LAWSUIT

As an additional matter, we disagree with the Court of Appeals' holdings in *Dine Brands* and *Disney* that "proceeding," as used in MCL 567.250(2), is limited to a formal lawsuit or petition commenced in a court. There is no explicit indication in MCL 567.250(2) that the phrase "action or proceeding" was intended to be a term-of-art phrase such that the entire phrase must have a singular, uniform meaning. Plaintiffs are correct that the commentary to § 29(b) of the 1981 Model Act,[15] upon which MCL 567.250(2) was

---

[15] Section 29(b) of the 1981 Model Act states, "No action or proceeding may be commenced by the administrator with respect to any duty of a holder under this Act more than 10 years after the duty arose." The associated commentary stated:

21

based, says that "an administrator must commence an action against a holder within 10 years after the time the property was first reportable." Considering the commentary, although it is *possible* that the drafters of the 1981 Model Act *could* have intended "action or proceeding" to have a singular meaning, such an understanding would be grammatically inconsistent with the use of "or" as a disjunctive connector.

We are reluctant to rely upon the alleged intent of drafters of a model code conveyed through commentary where there is no indication that the Legislature expressly considered or debated the commentary. We have previously stated that "[i]t is probable that the Legislature, in using the language of the model act, intended the meaning ascribed to that language by the drafters of the model act, *particularly where that meaning is the most natural sense of the language used.*" *Citizens Ins Co of America v Tuttle*, 411 Mich 536, 546; 309 NW2d 174 (1981) (emphasis added). Here, however, reading "action or proceeding" as referring only to a lawsuit or petition filed in a court is *not* the most natural sense of the language used. Two longstanding principles of our jurisprudence are that we strive to avoid an interpretation that would render any part of the statute surplusage or nugatory, *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002), and that we generally presume the Legislature's use of different words demonstrates an intent that the words have different meanings, *US Fidelity & Guaranty Co*

---

Subsection (b) provides that an administrator must commence an action against a holder within 10 years after the time the property was first reportable. Under existing law it is not clear that statutes of limitations apply to the state in compelling a holder to report or deliver unclaimed property. A holder may under the 1966 Act be subject to suit for an indeterminate period. Certain states have argued that Section 16 of the 1966 Act applies to states and thus there is no statute of limitations. The 10-year limitation period will provide a holder with a cut-off date on which it can rely. [*Id.*]

*v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009). Additionally, " '[o]r' is . . . a disjunctive [term], used to indicate a disunion, a separation, an alternative." *Mich Pub Serv Co v Cheboygan*, 324 Mich 309, 341; 37 NW2d 116 (1949). The consistent placement of "or" between "action" and "proceeding" throughout the UUPA, including in MCL 567.250(2), indicates that the Legislature intended for the statute of limitations to be satisfied by *either* the Treasurer's commencement of an action or of a proceeding against a holder. Had the Legislature intended "action or proceeding" to have a singular meaning as opposed to conveying two alternative options, it easily could have defined the phrase within the UUPA. Alternatively, the Legislature could have used one word rather than two.

We additionally note that the word "proceeding" is a broader term than "action" when used for a technical or legal purpose. A lay dictionary from the time of the UUPA's adoption defined "proceeding" as encompassing "a particular action or course of action," a "legal action," and "the taking of legal action." *Webster's New World Dictionary of American English: Third College Edition* (1988). Additionally, part of the definition of "proceeding" in *Black's Law Dictionary* (6th ed) states:

> In a general sense, the form and manner of conducting judicial business before a court or judicial officer. . . . Term also refers to administrative proceedings before agencies, tribunals, bureaus, or the like.
>
> *An act which is done by the authority or direction of the* court, *agency*, or tribunal, *express or implied; an act necessary to be done in order to obtain a given end*; *a prescribed mode of action for carrying into effect a legal right*. All the steps or measures adopted in the prosecution or defense of an action. Statter v. United States, [66 F2d 819, 822 (CA 9, 1933)]. The word may be used synonymously with "action" or "suit" to describe the entire course of an action at law or suit in equity from the issuance of the writ or filing of the complaint until the entry of a final judgment, or may be used to describe any

23

act done by authority of a court of law and every step required to be taken in any cause by either party. The proceedings of a suit embrace *all* matters that occur in its progress judicially. [Emphasis added.]

Thus, dictionary definitions suggest that "proceeding" can encompass both judicial and administrative processes depending on the context in which the word is used.

As a final matter, we note that courts have also interpreted "proceeding" to mean different things depending on the context. For example, we have referred to "proceeding" as a stage, hearing, or procedure occurring in a matter pending in a court of law. See *Meyers v Barlock*, 281 Mich 629, 631-632; 275 NW 656 (1937) (holding that attendance as a witness at a "proceeding" outside the county in which the witness lives immunizes that witness from service of a summons while in attendance but that an interview at a police station is not a "proceeding"); see also *People v Bobek*, 217 Mich App 524, 530; 553 NW2d 18 (1996) (holding that "proceeding" as used in the Holmes Youthful Trainee Act, MCL 762.11 *et seq.*, refers to all procedures, hearings, etc. before the court). But as federal judicial decisions demonstrate, the use of "proceeding" can encompass administrative processes as well. See *United States v Kirst*, 54 F4th 610, 620 (CA 9, 2022) ("It is settled law in this circuit that, as a general matter, an administrative investigation is a 'proceeding' within the meaning of [18 USC] § 1505."); *Sexton v Panel Processing, Inc*, 912 F Supp 2d 457, 459, 472 (ED Mich, 2012) (defining a "proceeding" in the context of litigation involving the Employee Retirement Income Security Act, 29 USC 1001 *et seq.*, as "the course of procedure in a judicial action or in a suit in litigation" and as a "procedural means for seeking redress from a tribunal or agency") (quotation marks and citations omitted); *United States v Fruchtman*, 421 F2d 1019, 1021 (CA 6, 1970) (noting that " 'proceeding' is a term of broad scope, encompassing *both the investigative and adjudicative functions*

24

*of a department or agency*") (emphasis added). Thus, courts also have recognized that, depending on the context, "proceeding" is broader than "action" and can encompass judicial or administrative matters.

In conclusion, when "proceeding" is used in a technical or legal sense, it encompasses all stages of a lawsuit filed in a court, but the term is not limited to judicial proceedings. The term "proceeding" only appears in the UUPA as part of the phrase "action or proceeding"; in other words, "proceeding" is coupled with "action" by the disjunctive connector "or." Because the use of "or" indicates an alternative, and because we have an obligation to give meaning to every word in a statute without rendering other parts of a statute surplusage, we conclude that the word "proceeding," as used in MCL 567.250(2) and elsewhere in the UUPA, encompasses a formal administrative proceeding or investigation as well as a formal legal action commenced in a court. An examination and the processes and procedures it entails are parts of administrative proceedings; therefore, a proceeding includes an examination.

3. HARMONIZATION OF MCL 567.250(2) WITH THE REMAINDER OF THE UUPA

Interpreting "proceeding" as having a broader meaning than "action" within MCL 567.250(2) provides harmony within the UUPA for several reasons. The UUPA includes only three enforcement mechanisms that the Treasurer can utilize to ensure compliance with the UUPA. The first is a formal demand for a "verified report" from a holder who has not filed a report or who filed an incomplete or false report. MCL 567.251(1). The second is an examination of "the records of a person to determine whether the person has complied with" the UUPA, MCL 567.251(2), which concludes with a "notice of

examination determination" that constitutes a "decision of the administrator" setting forth "the property that is deliverable by the holder to the administrator as a result of an examination," MCL 567.251a(1) and (15). The third option is that the Treasurer can "bring an action in a court of competent jurisdiction to enforce" the UUPA. MCL 567.253.

The first two enforcement mechanisms involve the administrative audit procedures that make up an examination. The third is a formal lawsuit commenced in court. While the first two procedures do not have all the characteristics of a formal contested case proceeding under MCL 24.271 to MCL 24.288 of the Administrative Procedures Act, MCL 24.201 *et seq.*, the legal formalities are similar. For example, MCL 567.251(4) requires the Treasurer to promulgate rules "on auditing standards," and MCL 567.260 authorizes the Treasurer to promulgate other "rules necessary to carry out the provisions of" the UUPA. The Treasurer has promulgated administrative rules that formalize the audit process and the rights of holders, and the Treasurer has authority to promulgate additional rules as necessary.

Additionally, while not included in the UUPA in 1995, the Legislature added a formalized administrative examination process and set forth the rights of holders through the addition of MCL 567.251a and MCL 567.251b. See 2014 PA 423, effective March 31, 2015 (adding MCL 567.251a); 2015 PA 242, effective December 22, 2015 (adding MCL 567.251b). These amendments were expressly made retroactive to "audits in progress as of August 15, 2015," such as the examinations at issue in these cases, but not to "contested determinations in litigation before the date of enactment of this amendatory act." 2015 PA 242, enacting § 1. Under MCL 567.251a(2), holders have a right to administratively appeal a notice of examination determination "by filing a request for reconsideration . . . ." This

26

right can be invoked or waived without prejudicing a holder's right to also challenge the notice of examination determination through a legal action in the circuit court. Although reconsideration appeals are expressly "not subject to the administrative procedures act of 1969," MCL 567.251a(10), there is a right to a hearing during the appeal; representation of the holder by "any person"; a right to present testimony and argument; a right to make an audiorecording of the appeal; a right to receive a written recommendation from the Treasurer's delegate; and a right to a written decision from the Treasurer affirming, rejecting, or modifying the recommendation, MCL 567.251a(10), (11), and (12). MCL 567.251b also provides for a streamlined audit procedure for eligible in-state holders that is to be completed within 18 months, and that audit is expressly subject to administrative rules promulgated by the Treasurer and includes administrative appeal rights. In short, the processes set forth in MCL 567.251a and MCL 567.251b resemble a formal administrative investigation that is analogous to what would exist leading up to and through a contested case proceeding under the Administrative Procedures Act.

Finally, if we were to accept plaintiffs' argument that "proceeding" does not encompass the entirety of the administrative examination process, then the record retention requirement set forth in the UUPA would be nonsensical. MCL 567.252(1) requires that records be maintained for 5 or 10 years (depending on the type of record and transaction). Under plaintiffs' reading, the Treasurer's examinations could not encompass all records within that period because the statute of limitations for the oldest records would continually expire during the examination.

For all the reasons stated, we hold that the phrase "action or proceeding" as used in MCL 567.250(2) encompasses formal lawsuits initiated in court as well as formal

27

administrative procedures related to enforcement of and compliance with a holder's duties under the UUPA. A formal administrative procedure includes the audit-like examination process under MCL 567.251 and MCL 567.251a. This means that the Treasurer must initiate an examination to determine whether a holder has complied with their legal duty to annually report and remit presumptively abandoned property within 5 or 10 years (depending on the type of transaction) of the date that legal duty arose. Because the Court of Appeals in *Dine Brands* and *Disney* held that an "action or proceeding" does not include the UUPA's examination process, we reverse those holdings.

## B. THE COMMENCEMENT OF AN EXAMINATION DOES NOT TOLL THE PERIOD OF LIMITATIONS IN MCL 567.250(2)

The next issue we must decide is whether the Treasurer's commencement of an examination tolls the statute of limitations in MCL 567.250(2). We agree with plaintiffs that the timely initiation of an examination does not toll the statute of limitations.

The parties agree that MCL 567.250(2) is the relevant statute of limitations for the UUPA and that it *does not* contain an express tolling provision. This Court has observed that tolling provisions, like statutes of limitations, "are of legislative creation." *Mair v Consumers Power Co*, 419 Mich 74, 85; 348 NW2d 256 (1984). This Court has long recognized that statutes of limitations exist to avoid the litigation of stale claims and to encourage litigants not to sit on their rights or allow evidence to disappear. See *id*. at 80; *Wells v Detroit News, Inc*, 360 Mich 634, 639; 104 NW2d 767 (1960). Accordingly, "it is the general rule that exceptions to statutes of limitation are to be strictly construed." *Mair*, 419 Mich at 80.

The Legislature is aware of tolling provisions and explicitly articulates these provisions where it intends that the statute of limitations be tolled. See, e.g., MCL 205.27a(3) ("The statute of limitations shall be extended for the following if the period exceeds that described in [MCL 205.27a(2)][.]"); MCL 500.2833(1)(q) ("The time for commencing an action is tolled from the time the insured notifies the insurer of the loss until the insurer formally denies liability."). This Court has typically rejected invitations to apply tolling of a legislatively enacted statute of limitations in the absence of express statutory language. For example, in *Mair*, this Court addressed MCL 600.5856, as enacted by 1961 PA 236, the tolling provision of the Revised Judicature Act, MCL 600.101 *et seq*., as applied to administrative proceedings. *Id*. at 78. We held that administrative proceedings do not toll the statute of limitations under former MCL 600.5856 because administrative proceedings are not mentioned in the statute. *Id*. at 82-85. The holding from *Mair* remains true today. MCL 600.5856, as amended by 2004 PA 87, provides for the tolling of a statute of limitations or repose only (1) upon the filing of a complaint if the summons and complaint are timely served on the defendant, (2) when a court obtains jurisdiction over a defendant, or (3) when notice in a medical malpractice action is provided in compliance with MCL 600.2912b.

Had the Legislature intended the Treasurer's commencement of a UUPA examination to toll the statute of limitations in MCL 567.250(2), it would have adopted language to effectuate that intent. In fact, at least two state legislatures have enacted such specific language. Delaware adopted a statute of limitations based on the 1981 Model Act—the same model act upon which the UUPA is based—but it added express tolling language. Specifically, Del Code Ann, tit 12, § 1156(b) states:

29

The State Escheator may not commence an action or proceeding to enforce this chapter with respect *to the reporting, payment, or delivery of property more than 10 years after the duty arose. The period of limitation established by this subsection is tolled by* the earlier of the State Escheator's *delivery of a notice of an examination to a holder under this chapter*, the Secretary of State's delivery of notice that the person may enter into an unclaimed property voluntary disclosure agreement under § 1172(a) of this title, or the holder's written election to enter into an unclaimed property voluntary disclosure agreement under § 1173 of this title, or if the State Escheator reasonably concludes that the holder has filed a report containing a fraudulent or wilful misrepresentation. [Emphasis added.]

Similarly, the North Dakota Legislature enacted a statute of limitations based on the 2016 update of the model act, but its state legislature also included tolling language. The statute provides, in relevant part, as follows:

2. The administrator may not commence an action or proceeding to enforce this chapter with respect to *the reporting, payment, or delivery of property more than seven years after the holder filed a nonfraudulent report under section 47-30.2-21 with the administrator.* The parties may agree in a record to extend the limitation in this subsection.

3. The administrator may *not commence an action, proceeding, or examination with respect to a duty of a holder under this chapter more than ten years after the duty arose.*

4. The periods of limitation established by this section *are tolled by the administrator's delivery of a notice that a holder is subject to an examination under section 47-30.2-55.* [ND Cent Code 47-30.2-39(2) to (4) (emphasis added).]

We decline to read tolling language into MCL 567.250(2) given the Legislature's decision not to include a tolling provision anywhere in the UUPA. MCL 600.5856 does provide for tolling if a holder or the Treasurer files a legal action in court regarding compliance with or enforcement of the UUPA. But that statute does not provide for tolling upon the commencement of an administrative or quasi-administrative proceeding, and in keeping with *Mair*, we will not read such language into the statute or the UUPA. Because

30

the commencement of an examination does not toll the statute of limitations under MCL 567.250(2), the period of limitations as to a holder's annual duty to report and remit property under MCL 567.238 and MCL 567.240 continues to run during an examination.

C. ISSUE TO BE RESOLVED ON REMAND: INTERACTION OF THE STATUTE OF LIMITATIONS AND POSTEXAMINATION ENFORCEMENT EFFORTS

Our holdings—that an examination is a proceeding for purposes of MCL 567.250(2) and that the commencement of an examination does not toll the statute of limitations—are not sufficient to resolve all the issues on appeal. The circuit court held in each case that the Treasurer's failure to commence an enforcement action under MCL 567.253 within 5 or 10 years of the holder's legal *duty to report and remit abandoned property* under the UUPA means that *any future enforcement action* would be time-barred by MCL 567.250(2). This holding was based on an understanding that any future action by the Treasurer would involve enforcement of the holder's annual reporting and remittance duties.

Conversely, in *Disney (On Remand)*, the Court of Appeals held that tolling was irrelevant because the examination was timely initiated, there is no statutory time limit on completing a timely initiated examination, and the Treasurer issued a valid notice of examination determination under MCL 567.251a. See *Disney (On Remand)*, unpub op at 3-4. According to *Disney (On Remand)*, the Treasurer did not need to take any action beyond issuing its decision under MCL 567.251a, and the burden is on the holder to submit a timely challenge to that decision. We disagree. While the notice of examination in each case was a timely initiated proceeding, there remains a question as to the duty that is at

31

issue for purposes of postexamination enforcement for measuring the statute of limitations. This question remains unresolved.

The UUPA's statute of limitations provides as follows:

Except as otherwise provided in subsection (3) [which is irrelevant here], an action or proceeding shall not be commenced by the administrator *with respect to any duty of a holder under this act* more than 10 years, or, for the holder of records of transactions between 2 or more associations as defined under [MCL 567.257a(2)], more than 5 years, *after the duty arose*. [MCL 567.250(2) (emphasis added).]

Under the plain language of MCL 567.250(2), the running of the applicable period of limitations is linked to "any duty of a holder under" the UUPA, and the period runs from the date "the duty arose." It is therefore necessary to identify *the relevant legal duty* that is implicated by postexamination enforcement efforts before determining whether the period of limitations has expired as to the unreported property identified during an examination.

A holder's legal duties to annually report and remit presumptively abandoned property are imposed by MCL 567.238 and MCL 567.240, and a holder's legal duty to maintain records is imposed by MCL 567.252. An examination that is commenced under MCL 567.251 and MCL 567.251a concerns the Treasurer's efforts to determine whether a holder has complied with their annual legal duties to report and remit property. Plaintiffs argue that any future enforcement action under MCL 567.253 would be nothing more than an effort to enforce their original reporting and remittance duties. The Treasurer argues that a new and distinct legal duty is created once a final notice of examination determination is issued under MCL 567.251a(1). As support for its position, the Treasurer argues that MCL 567.251a(1) and the penalty provisions under MCL 567.255 interact to

32

create a separate legal duty to comply with the outcome of the examination and that, because of this, the statute of limitations in MCL 567.250(2) begins to run anew from the date the notice of examination determination is issued.

If the Treasurer means to suggest that the mere commencement of an examination imposes a distinct legal duty on a holder to make payment or remit property to the Treasurer, then we disagree. It is possible that commencement of an examination could implicate the civil penalty provision under MCL 567.255(2), but the commencement of an examination does not toll a holder's initial reporting and remittance duty for the reasons we have already explained. Only after an examination is conducted and a "notice of examination determination" is issued under MCL 567.251a can it be said that the UUPA *potentially* imposes an additional duty upon the holder to *pay or remit property* under MCL 567.255.[16] The potential existence of a separate postexamination duty that could be enforced for an additional period remains an open question. If such a duty exists, then the next question concerns the scope of previously abandoned property that could be encompassed within such a duty.

---

[16] Although we do not decide whether complying with the results of an examination relates to a legal duty that is distinct from the annual reporting and remittance duties under the UUPA, it is notable that MCL 567.255 imposes a tiered structure of penalties and interest for a holder's failure to do specific things. MCL 567.255(2) states that a person guilty of a willful failure to "render any report or perform other duties required under" the UUPA shall pay a civil penalty of $100 per day, up to $5,000. MCL 567.255(3) states that a willful failure to pay or deliver property as required by the UUPA results in a "civil penalty equal to 25% of the value of the property that should have been paid or delivered." Under MCL 567.255(4), "[a] person who willfully refuses after written demand by the administrator to pay or deliver property to the administrator" is guilty of a misdemeanor that can result in up to six months' imprisonment, between $500 to $25,000 in fines, or both. But the administrator has discretion to waive interest or civil fines. MCL 567.255(5).

We agree with the Court of Appeals' statement in *Disney (On Remand)* that nothing in the UUPA *requires* the Treasurer to take further action after issuing a notice of examination determination under MCL 567.251a(1). However, that does not necessarily mean that the Treasurer has an unlimited period to compel compliance. The Court of Appeals decision failed to analyze how MCL 567.250(2) operates when a party refuses to voluntarily comply and the Treasurer is forced to commence a postexamination enforcement action. This is understandable considering the briefing along with the reality that the Treasurer has not initiated a postexamination action and that plaintiffs instead filed declaratory actions to prohibit such enforcement.

Resolution of this issue will turn on whether MCL 567.251a and MCL 567.255 interact to impose a legal duty of postexamination compliance on a holder that is distinct from the annual duty to report and remit abandoned property. This issue must be resolved in these cases because plaintiffs sought and received prospective declaratory and injunctive relief that bars the Treasurer from filing an enforcement action in the future. However, because this issue does not appear to have been fully briefed in the Court of Appeals and was also sparsely briefed or argued in this Court, we remand these cases to the Court of Appeals for resolution.

V. CONCLUSION

For the reasons stated in Part IV(A) of this opinion, we reverse the Court of Appeals' January 19, 2023 published decisions in *Dine Brands*, 345 Mich App 227, and *Disney*, 345 Mich App 213. For the reasons stated in Part IV(B) and Part IV(C) of this opinion, we affirm in part and vacate in part the Court of Appeals' January 11, 2024 unpublished

34

opinion in *Disney (On Remand)*. Finally, we remand these cases to the Court of Appeals for resolution of the remaining issue identified in Part IV(C) of this opinion. We do not retain jurisdiction.

Elizabeth M. Welch
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Kyra H. Bolden

THOMAS, J., did not participate because the Court considered this case before she assumed office.